## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, | |
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKER LOCAL 669 UA EDUCATION FUND, | |
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY PENSION FUND, | |
| TRUSTEES OF THE SPRINKLER INDUSTRY SUPPLEMENTAL PENSION FUND, | Civil Action No. TDC-14-2518 |
| and | |
| TRUSTEES OF THE INTERNATIONAL TRAINING FUND, | |
| Plaintiffs, | |
| v. | |
| FIRE TECH SPRINKLER, INC., | |
| Defendant. | |

## MEMORANDUM OPINION

This breach of contract matter is before the Court on a Motion for Default Judgment, ECF No. 7. Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2014). For the following reasons, the Motion for Default Judgment is GRANTED.

## BACKGROUND

Plaintiffs are the trustees ("Trustees") of the National Automatic Sprinkler Industry Welfare Fund and four other employee benefit plans (collectively, the "NASI Funds"), as that term is defined in the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1002(3). Defendant Fire Tech Sprinkler, Inc. ("Fire Tech") is an employer engaged in an industry affecting commerce, as defined in ERISA. *See* 29 U.S.C. §§ 1002(5), (12). Fire Tech is required to make regular contributions to the NASI Funds pursuant to three agreements: the Collective Bargaining Agreement ("CBA") between the Sprinkler Fitters Local Union 669 and various employers, including Fire Tech; the Restated Agreements and Declaration of Trust ("Trust Agreements"), which established the NASI funds; and the Guidelines for Participation in the NASI Funds ("Guidelines"). By the terms of these agreements, Fire Tech must make contributions to the NASI Funds "for each hour of work by employees performing installation of automatic sprinkler systems" at rates specified in the CBA. Compl. ¶ 4, ECF No. 1.

To enable the Trustees of the NASI Funds to determine what contributions are due, the CBA also requires that Fire Tech submit monthly reports detailing the hours worked by all covered employees. If an employer fails to submit reports of actual hours worked, contributions are determined based on the higher of (1) the average for the monthly payments actually made by the employer for the last three months for which payments were made, or (2) the average of the monthly payments actually made by the employer for the last 12 months for which payments were made. The Guidelines provide that if an employer fails to timely make its required contributions to the NASI Funds and the Trustees are forced to file suit to recover these unpaid contributions, the employer will be liable for liquidated damages, computed as follows: if payment is not received by the fifteenth day of the month in which it is due, the employer must

2

pay ten percent of the contribution amount; if the payment is not received by the last working day of the month in which payment was due, the employer must pay an additional five percent; and if payment is not received by the fifteenth day of the following month, the employer must pay an additional five percent. The Guidelines further specify that if the Trustees must initiate a legal action to compel payment of delinquent contributions, the employer also becomes liable for interest on the unpaid contributions at a rate of 12 percent per annum.

From January 2013 to June 2013, Fire Tech submitted the required reports on employee hours worked, but failed to make the corresponding $21,963.05 in fund contributions. From August 2013 to June 2014, Fire Tech failed to submit any reports on hours worked or to make any contributions to the NASI funds. Accordingly, on August 7, 2014, the Trustees filed the instant Complaint seeking (1) $21,963.05 in unpaid contributions for the period from January 2013 to June 2013, (2) $39,543.92 in unpaid contributions for the period from August 2013 to June 2014, (3) $12,121.95 in liquidated damages, (4) interest on the unpaid contributions, and (5) reasonable attorneys' fees and costs.

On September 10, 2014, Fire Tech was served with the Complaint and failed timely to file a responsive pleading. On October 27, 2014, the Trustees filed a Motion for Clerk's Entry of Default and a Motion for Default Judgment. On November 25, 2014, a default was entered against Fire Tech.   To date, Fire Tech has not responded to that default or to the Trustees' Motion for Default Judgment.

In the Motion for Default Judgment, the Trustees assert that "the amount owed by the Defendant to the Plaintiff Funds changed" because Fire Tech also missed payments in July 2013 and from July 2014 to September 2014. Mot. Default J. at 1.  The Trustees thus adjust their damages upwards, seeking $72,292.33 in unpaid contributions and $13,740.68 in liquidated

3

damages.  The Trustees also specify that they are owed $7,840.50 in interest, $545.00 in costs, and $662.50 in attorneys' fees.

On May 19, 2015, the Court issued an Order instructing the Trustees to provide revised calculations for contributions owed for the period from August 2013 to June 2014.  In the Complaint, the Trustees computed Fire Tech's unpaid contributions for August 2013 to June 2014 using the hours worked for May 2013, June 2013, and July 2013, to arrive at an average of 188 hours worked per month.  However, the Complaint alleges that no payments were made in May 2013 and June 2013, and the Complaint also asserts that, by the terms of the parties' agreements, delinquency amounts must be computed based on months in which payments were actually made.  The Court's Order thus asked the Trustees to provide calculations computed in accordance with the parties' agreements.  In their Response to that Order, the Trustees provided calculations that increased the monthly average hours worked from 188 to 200.8.  The Trustees accordingly amended their Motion for Default Judgment to increase their damages to $76,288.99 in unpaid contributions, $15,257.80 in liquidated damages, $12,803.41 in interest, $585.00 in costs, and $662.50 in attorneys' fees.

## DISCUSSION

### I.   Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Pursuant to Rule 55(b)(2), after a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default

4

judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494-95 (D. Md. 2002). The Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421-22 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The court must determine whether the allegations support the relief sought. *See id.* To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."). Rule 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. *In re Genesys Data Techs., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).

## II.    Liability

Because Fire Tech has failed to appear or otherwise defend, the Court accepts as true the well-pleaded factual allegations in the Complaint. *Ryan*, 253 F.3d at 780. Those allegations establish that Fire Tech was obligated by the terms of the CBA, the Trust Agreements, and the Guidelines to make timely contributions to the NASI Funds for any hours worked by covered employees, and that Fire Tech failed to make those payments for the periods from January 2013 to June 2013 and August 2013 to June 2014. The Complaint therefore establishes that Fire Tech is liable to the Trustees for those unpaid contributions and for additional damages as set out in the governing agreements.

## III.    Damages

By the terms of the agreements between the parties, Fire Tech is liable to the Trustees for its (1) unpaid contributions, (2) liquidated damages, (3) interest of 12 percent per annum on the unpaid contributions, (4) costs, and (5) reasonable attorneys' fees. These provisions track ERISA itself, which provides that employers who fail timely to make contributions are liable for

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of –
>> (i) interest on the unpaid contributions; or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the Court under Subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g). The Trustees are therefore entitled under ERISA and the terms of the parties' agreements to each of the categories of damages that the Trustees assert in their Complaint.

As to specific amounts, in the Second Amended Motion for Default Judgment, the Trustees assert that Fire Tech owes (1) $76,288.99 in unpaid contributions, (2) $15,257.80 in liquidated damages, (3) $12,803.41 in interest, (4) $585.00 in costs, and (5) $662.50 in attorneys' fees. In support of the damages as to the unpaid contributions, the Trustees submit the declaration of John P. Eger, the Assistant Fund Administrator of the NASI Funds, in which Mr. Eger attests to the facts in the Complaint and to the accuracy of these figures. However, the damages amount for unpaid contributions includes contributions owed for July 2013, July 2014, August 2014, and September 2014. The Trustees did not allege in their Complaint that Fire Tech missed these payments. As a result, the Trustees cannot recover these unpaid contributions in this suit. Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

In addition, the damages alleged in the Second Amended Motion for Default Judgment for the period from August 2013 to June 2014 increase the amount owed, because the Trustees compute that liability based on the revised monthly average hours worked of 200.8, an increase from the 188 average hours worked pleaded in the Complaint. The Trustees cannot, however, recover these additional monies. When a complaint specifies the amount of damages sought, the plaintiff is limited to a default judgment in that amount. *In re Genesys,* 204 F.3d at 132 ("When a complaint demands a specific amount of damages, courts have generally held that a default judgment cannot award additional damages ... because the defendant could not reasonably have expected that his damages would exceed that amount."). The Trustees are therefore entitled only

to $61,506.97 in unpaid contributions for the periods from January 2013 to June 2013 and August 2013 to June 2014, the amount of damages they pleaded in their Complaint.

Based on $61,506.97 in unpaid contributions, the Trustees would appear to be entitled to $12,301.39 in liquidated damages (20 percent of $61,506.97). However, in the Complaint, they ask for $12,121.95 in liquidated damages and are therefore awarded only $12,121.95. *In re Genesys Data Technologies, Inc.,* 204 F.3d at 132. As for interest, the Trustees calculate the interest owed as $12,803.41, a figure that appears to be consistent with what is provided for in the parties' agreements. The Trustees are therefore awarded $12,803.41 in interest.

As to costs and reasonable attorneys' fees, the Trustees submit the declaration of attorney Charles W. Gilligan and a spreadsheet detailing the hours billed and costs incurred by the Trustees' counsel. Those documents indicate that the Trustees' counsel, who has been a member of the bar for over 20 years, spent 0.5 hours on this case at a rate of $275.00 per hour, and that counsel's paralegal spent 5.25 hours on this case at a rate of $100 per hour. These rates are well within the local guidelines and are reasonable. *See* Local Rules App. B ¶ 3 (D. Md. 2014). The Trustees are therefore awarded $662.50 in attorneys' fees. The billing documents provided also substantiate the following expenses: $185.00 for service of process and $400.00 for the complaint filing fees. The Trustees are therefore awarded $585.00 in costs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Default Judgment is GRANTED. Plaintiffs are awarded a total of $87,679.83, as specified in the separate Order accompanying this Memorandum Opinion.


Date:   July 16, 2015

THEODORE D. CHUANG
United States District Judge